IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01634-WJM-SKC

Vivos Therapeutics, Inc.,

        Plaintiff,

    v.

Ortho-Tain, Inc.,

        Defendant.

---

## FIRST AMENDED COMPLAINT

Plaintiff Vivos Therapeutics, Inc. ("Vivos") brings the following Amended Complaint against Defendant Ortho-Tain, Inc. ("Ortho-Tain" or "Defendant") due to Ortho-Tain's defamatory statements, intentional interference with Vivos's business relationships and clients, and false advertising, and states as follows:

## INTRODUCTION

1.    Vivos is a medical technology company focused on the development and commercialization of a highly differentiated technology offering a clinically effective non-surgical, non-invasive, non-pharmaceutical, and low-cost solution for patients with sleep disordered breathing, including mild-to-moderate obstructive sleep apnea. Vivos offers novel and proprietary alternatives for treating mild-to-moderate obstructive sleep apnea as well as certain craniofacial and anatomical anomalies known to be associated with mild-to-moderate obstructive sleep apnea. To do so, Vivos works with independent

dentists across the country, who learn how to deploy Vivos's treatments and devices to help their patients. These affiliations with dentists are the lifeblood of Vivos's business.

2.      From time to time, Vivos also works with other product and service providers in the dental industry to promote Vivos treatments and devices. One such affiliate is Benco Dental Supply Co. ("Benco"), which collaborated with Vivos in 2020 to co-host a series of continuing education courses for dental professionals highlighting the general benefits of oral device therapy for sleep-disordered breathing.

3.      Defendant Ortho-Tain is a direct competitor of Vivos. Having been in the market for years, Ortho-Tain has recently lost significant market share to Vivos and its innovative products and business strategies. In spring 2020, Ortho-Tain through its CEO, Leslie Stevens, and outside counsel, Nathan Neff, began making false, threatening, and defamatory statements about Vivos to Benco related to the continuing education courses Benco was co-hosting with Vivos. Examples of such communications are attached and incorporated herein at **Exhibit 1**, Stevens Ltr. (Apr. 2, 2020); **Exhibit 2**, Neff Ltr. (May 11, 2020); **Exhibit 3**, Neff Ltr. (June 1, 2020); and **Exhibit 4**, Neff Ltr (June. 3, 2020).

4.      Then, in late 2020—after Vivos had already filed this lawsuit to address Ortho-Tain's harmful and illegal conduct—Ortho-Tain expanded its deliberate campaign to undermine Vivos's relationships by sending defamatory email advertisements to Vivos's dentist-clients across the country, including dentists located in California, Delaware, Maryland, Utah, and Washington. Examples of these communications are attached and incorporated herein at **Exhibit 5**, Ortho-Tain Email to Dr. Tigani re Vivos;

**Exhibit 6**, Ortho-Tain Email to Dr. Knight re Vivos; **Exhibit 7**, Ortho-Tain Email to Dr. Kim re Vivos; **Exhibit 8**, Ortho-Tain Email to Dr. Hills re Vivos; and **Exhibit 9**, Ortho-Tain Email to Dr. Nutting re Vivos.

5.      In addition, Ortho-Tain continues to publish a number of false and misleading statements about its business and products through promotional materials distributed online and at Ortho-Tain events. These statements, which falsely claim that Ortho-Tain has "over 500 current patents," that Ortho-Tain's products have been "cleared" by the FDA, and that Ortho-Tain has treated "over 4 million patients," materially mislead dentists and consumers—Vivos's current and prospective clients.

6.      Ortho-Tain's actions have interfered with Vivos's business relationships and contracts, causing Vivos harm to its reputation, loss of goodwill, and monetary damages. Ortho-Tain's actions also constitute violations of the Colorado Consumer Protection Act and the Lanham Act.

7.      Vivos seeks permanent injunctive relief to prevent Ortho-Tain's continued false, misleading, and harmful statements to Vivos's business affiliates, clients, and the general public. Vivos further seeks declaratory relief to refute Ortho-Tain's false allegations, as well as monetary damages to compensate Vivos for harm caused by Ortho-Tain.

## <u>PARTIES</u>

8.      Plaintiff, Vivos Therapeutics, Inc., is a Delaware corporation, with its principal place of business in Colorado.

9.      Defendant, Ortho-Tain, Inc., is a Puerto Rico corporation with its principal place of business in Puerto Rico.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. This Court also has subject matter jurisdiction over this matter under 28 U.S.C. § 1331, 15 U.S.C. § 1125(a), and 28 U.S.C. §§ 2201–02 because Vivos seeks relief under the Lanham Act as well as declaratory relief related to a federal question.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions, and harm giving rise to Vivos's claims occurred in Colorado.

12.     This Court has personal jurisdiction over Defendant Ortho-Tain because Defendant regularly conducts business in Colorado, advertises in Colorado, has business operations in Colorado, works with affiliates in Colorado, and caused harm to Vivos in Colorado in the instant dispute.

## FACTUAL ALLEGATIONS

***Vivos's Business***

13.     Vivos is a medical device technology company focused on the development and commercialization of innovative solutions for patients with sleep-disordered breathing, including obstructive sleep apnea. Vivos develops and markets a number of specially designed, customized and pre-formed oral appliances, which are

integrated into a patient-specific, multi-disciplinary therapeutic protocol used by trained dental and medical providers (the "Vivos System").

14.     Vivos maintains relationships with dentists across the country for the purchase and use of the Vivos System.

15.     Dentists interested in working with Vivos enter agreements with Vivos for the use of the Vivos System and oral appliances. These agreements are the core of Vivos's business model and profitability.

16.     Vivos also has an ongoing business relationship and contracts with Benco. As part of that business relationship, Vivos supplies Benco with Vivos products.

17.     In addition, Benco provides promotional services to Vivos. Under this arrangement, Benco organizes continuing education events for dental professionals and hosts Vivos speakers at those events.

18.     Defendant, Ortho-Tain, is a direct competitor of Vivos. Like Vivos, Defendant markets and sells oral appliances to be used by dental and medical providers to treat various conditions. Ortho-Tain sells many of its appliances under its "HealthyStart" brand.

19.     Ortho-Tain recently lost significant market share to Vivos because of Vivos's superior products and services.

***Ortho-Tain Directs Misinformation Campaign at Benco***

20.     In an apparent attempt to improperly monitor and interfere with Vivos's business, Ortho-Tain has engaged in acts of corporate espionage against Vivos, including sending agents to monitor and record Vivos presentations without permission.

Presentations improperly recorded by Ortho-Tain include a presentation given by Dr. Brian Kraft in St. Louis, Missouri on February 7, 2020, and a webinar series given by Dr. Ben Miraglia and broadcast on multiple occasions through the spring of 2020.

21.     In the spring of 2020, Ortho-Tain's CEO, Leslie Stevens, and outside counsel, Nathan Neff, sent a series of written communications to Benco's Managing Director, Chuck Cohen, and General Counsel, Robert Bisal, regarding Vivos presentations at Benco events that Ortho-Tain had apparently covertly surveilled and recorded. *See* Exs. 1-4.

22.     Ortho-Tain's written communications to Benco incorrectly allege that Vivos knowingly made false representations at the Benco-Vivos events, that Vivos attempted to "pawn off" Vivos products as Ortho-Tain products, and that Vivos interfered with Ortho-Tain's contracts with dental providers. Ex. 1. at 2–3; *see* Exs. 2-4.

23.     Ortho-Tain's written communications falsely allege that Vivos violated state and federal law, including the Lanham Act, under a theory of false designation of origin. Ex. 1 at 3; *see* Exs. 2-4.

24.     Ortho-Tain's written communications disparage and mischaracterize Vivos's products, professional reputation, and intellectual property by asserting, *inter alia*, that (1) Vivos misrepresented patient cases, (2) Vivos does not own any intellectual property for pediatric application, (3) Ortho-Tain owns more than 500 registered patents, (4) Vivos intentionally misled its customers, and (5) Benco stands to lose business by continuing its relationship with Vivos. Exs. 1-4. All of these assertions are false, misleading, and disparaging.

25.     Ortho-Tain's written communications improperly threatened Benco and sought to persuade Benco to end its business relationship with Vivos. Exs. 1-4.

26.     Upon information and belief, Ortho-Tain made similar statements to Benco in oral communications during telephonic meetings with Benco representatives as contemplated in Ortho-Tain's letters. Ex. 1 at 3 ("Kindly contact me directly *to discuss* Benco's response to this information." (emphasis added)). Upon information and belief, Ortho-Tain's CEO, Leslie Stevens, and outside counsel Nathan Neff participated in these calls, as did Benco General Counsel Robert Bisal and Benco Managing Director Chuck Cohen.

27.     Ortho-Tain made the above statements with knowledge of their falsity, and with intent to disrupt Vivos's known business relationship and contracts with Benco.

28.     Ortho-Tain's statements have adversely affected and damaged Vivos's business relationship with Benco and made Vivos's performance under its contracts with Benco more difficult.

29.     The statements have further harmed Vivos's professional reputation and caused loss of Vivos's goodwill.

30.     Vivos requires a permanent injunction preventing Ortho-Tain's defamation and continued illegal and improper interference with Vivos's relationship with Benco.

***Ortho-Tain Directs Defamatory Email Campaign to Vivos Dentists Nationwide***

31.     Despite a pending lawsuit based on its defamatory communications to Benco, Ortho-Tain maliciously continued its systematic campaign to interfere with

Vivos's core relationships by communicating false and defamatory representations to Vivos's dentist-clients across the country.

32.     Specifically, in late 2020, Ortho-Tain sales representatives, including Rebecca Straight and Constance Tiberi, sent template email advertisements to Vivos's dentist-clients purporting to highlight "the differences between HealthyStart [Ortho-Tain's brand] and Vivos." Examples of these communications discovered by Vivos are attached at Exhibits 5 to 9.

33.     Ortho-Tain sent these email advertisements to dentists partnered with Vivos across the country, including dentists in California, Delaware, Maryland, Utah, and Washington.

34.     In these email advertisements, Ortho-Tain made numerous false and misleading statements about Vivos and Ortho-Tain. For example, Ortho-Tain misleadingly compared its HealthyStart pediatric appliances to "a premium Rolex watch" and the Vivos appliances to a "cheaply made back alley knock-off," and falsely alleged Vivos's products are manufactured "by unregulated entities and by unknown or non-disclosed materials." *Id.* Ortho-Tain also falsely asserted that Vivos's products are "neither approved nor cleared by the FDA." *Id.* Ortho-Tain also mischaracterized statements in Vivos's S-1 Registration Statement on file with the SEC, by asserting that Vivos's products are unsafe and ineffective and that Vivos is on "financial life support." *Id.*

35.     Ortho-Tain also misrepresented the nature of its own products in its communications, including repeatedly and falsely stating (i) that it holds over 500

patents for dental devices, (ii) that its products have "FDA clearance," and (iii) that it has treated over 4 million patients. *Id.* In fact, (i) Ortho-Tain holds only 20 current U.S. patents; (ii) Ortho-Tain products hold only FDA registration—not clearance; and (iii) on information and belief, Ortho-Tain has not treated 4 million patients or even maintained systems that would permit it track how many patients it has treated.

36.     Dentists who received Ortho-Tain's communications have expressed confusion and concern regarding the allegations contained in Ortho-Tain's false and defamatory form communication.

37.     Vivos maintains contracts with dentists who received the communication from Ortho-Tain.

38.     Upon information and belief, Ortho-Tain continues to send and/or intends to continue to send this form email communication to dentists across the country for the purpose of disparaging Vivos and its products and misleading consumers.

39.     Ortho-Tain's communications further harmed Vivos's professional reputation and caused loss of Vivos's goodwill.

40.     Ortho-Tain's communications significantly impact the public because they are directed to dentists—the actual and potential consumers of Ortho-Tain's and Vivos's products—and are intended to influence the care of these dentists' patients.

***Ortho-Tain's False and Misleading Promotional Materials***

41.     In addition to its targeted misinformation campaign against Vivos, Ortho-Tain continues to publish a number of false and misleading statements about Ortho-

Tain's business and its products through promotional materials hosted online and on its websites.

42.　　These statements falsely claim that Ortho-Tain has "over 500 current patents," that Ortho-Tain's products are "FDA approved," and that Ortho-Tain has treated "over 4 million patients."

43.　　These statements materially mislead dentists and consumers—Vivos's prospective clients.

44.　　Ortho-Tain's promotional materials significantly impact the public because they are directed to dentists and the consuming public.

## COUNT 1

**False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)**

45.　　Vivos realleges and incorporates all prior paragraphs of this Amended Complaint as if alleged herein.

*False and Misleading Advertising Emails to Dentists*

46.　　Ortho-Tain has committed false advertising by sending a series of sales emails to dentists in the fall of 2020.

47.　　Ortho-Tain's advertising emails contained a number of false and/or misleading statements regarding Vivos and its products, including, *inter alia*:

　　　　a. That Vivos's products are comparable to a "cheaply made back alley knock-off." In fact, Vivos products are made with high quality, bio-compatible components and techniques.

b. That Vivos uses "third-party foreign manufacturing, possibly by unregulated entities and by unknown or non-disclosed materials." In fact, Vivos devices are manufactured in ISO-9001 facilities practicing Good Manufacturing Practices and in compliance with all applicable regulations. Vivos's contract manufacturing facilities undergo regular audits to ensure compliance with these standards.

c. That Vivos "will offer you nothing more than a re-packaged statement of HealthyStart's materials …." In fact, Vivos uses its own unique advertising materials, products, and services.

d. That "Vivos [does] not know if its products are safe and clinically effective." In fact, Vivos has undertaken extensive bio-compatibility testing and conducted unpublished case studies and independent provider surveys to ensure product safety, compliance, and efficacy.

e. That "Vivos is seeking emergency life-support to make it through the year and even if it makes it to the ICU, it will still need to borrow further in order to stay alive …." In fact, Vivos is on sound financial footing.

f. That Vivos's products are "neither approved nor cleared by the FDA." In fact, Vivos's products are Class I registered and Class II cleared by the FDA. By contrast, Ortho-Tain's products have not been cleared by the FDA and are only registered with the FDA. Unlike clearance, FDA registration is essentially automatic and does not require substantive FDA review.

g.  That it is "unwise and potentially dangerous for any consumer to look to a new up-start [Vivos] or to a copy-cat system that seeks to grow and develop pediatric dentition with a series of appliances that have neither been independently researched nor FDA-cleared for the treatment of your pediatric patients." In fact, many dentists and patients have used Vivos products and services with great success and Vivos products are Class I registered and Class II cleared by the FDA. By contrast, Ortho-Tain's products hold only Class I registration.

h.  That "Vivos … does not own any patents for oral appliances used to treat pediatric cases." In fact, Vivos hold the rights to four design patents, sixteen utility patents, multiple foreign patents, as well as trademark protection for its brand. Vivos's patents are not age-specific, and are equally applicable to children and adults.

i.  That providers "risk their money with Vivos" and that this "gamble extends to their pediatric patients." In fact, many dentists and patients have used Vivos products and services with great success and Vivos's products present no more risks than Ortho-Tain/HealthyStart's.

48.  In its advertising emails, Ortho-Tain also made false and/or misleading written statements regarding Ortho-Tain's own products. These statements include, *inter alia*:

a. That Ortho-Tain/HealthyStart has "500+ approved patents." In fact, the vast majority of these patents are expired and Ortho-Tain has only 20 current U.S. patents.

b. That Ortho-Tain/HealthyStart has "successfully treated" "more than 4 million patients." In fact, on information and belief, Ortho-Tain has not treated this many patients and does not even track or maintain adequate information to ascertain the number of patients treated by Ortho-Tain products or whether this treatment was "successful."

c. That "HealthyStart® is the ONLY company that has invented, patented, developed, and offered a comprehensive series of oral appliances that actually treat the underlying root causes of pediatric Sleep Disordered Breathing." In fact, Vivos has done precisely that and has an intellectual property portfolio and product line to prove it.

d. That Ortho-Tain's oral appliances "have been independently and clinically tested and are cleared by the U.S. Food and Drug Administration and other international regulatory organizations." In fact, Ortho-Tain's products are not cleared with the FDA, they are only registered. By contrast, Vivos has both FDA-registered (Class I) and cleared (Class II) products. In addition, Vivos is not able to locate any evidence of clinical trials of Ortho-Tain products.

49.     Ortho-Tain's email advertisements containing the above assertions constitute commercial advertising. Specifically, Ortho-Tain's sales representatives sent

the communications to dentists for the purpose of acquiring the dentists as customers and/or influencing the dentists' decision to work with Vivos.

50.     Ortho-Tain's misrepresentations have or are likely to cause confusion or mistake as to the characteristics of Vivos and/or Ortho-Tain's goods or services.

51.     Ortho-Tain's misrepresentations are material, in that they have influenced or are likely to influence dentists' decisions regarding whether to purchase Vivos and/or Ortho-Tain's goods or services.

52.     Ortho-Tain's email advertisements caused multiple false statements to enter interstate commerce. Specifically, Ortho-Tain sent the advertisements to dentists in states across the country.

53.     Ortho-Tain's misrepresentations injured Vivos through harm to professional reputation and loss of goodwill vis-à-vis the dentists who received the communications.

54.     Upon information and belief, Ortho-Tain's misrepresentations have caused prospective clients of Vivos to refrain from purchasing Vivos goods or services.

55.     Ortho-Tain's misrepresentations are also likely to harm Vivos by discouraging future sales/contracts, creating misinformation in the marketplace about Vivos, impeding Vivos's goodwill, and harming its professional reputation.

56.     Ortho-Tain's deception in the advertising emails was willful and deliberate. Ortho-Tain knew it had no good faith basis to make its allegation. In addition, at the time of the email advertisements, Vivos had already corrected several of Ortho-Tain's allegations regarding patents in briefing in the case styled *Ortho-Tain, Inc. v. Colorado*

*Vivos Therapeutics Inc., et al.*, No. 1:20-cv-04301, currently pending in the U.S. District Court for the Northern District of Illinois. And Vivos had already filed the Complaint in the above-captioned case in an attempt to stop Ortho-Tain's tortious and defamatory conduct toward Vivos.

**False and Misleading Promotional Materials**

57.     Ortho-Tain has also committed false advertising in violation of the Lanham Act by publishing a number of false and misleading promotional materials about Ortho-Tain and its products.

58.     These materials include Ortho-Tain's website and the website it maintains for its brand, HealthyStart; Ortho-Tain/HealthyStart social media pages; Ortho-Tain/HealthyStart brochures; and Ortho-Tain/HealthyStart promotional materials used at conferences.

59.     False and misleading statements in Ortho-Tain's promotional materials include, *inter alia*:

     a.   That Ortho-Tain/HealthyStart have "511 current patents." *See, e.g.*, **Exhibit 11,** *A Parents [sic] Overview of Sleep Disordered Breathing and the HealthyStart Treatment*, available at https://www.youtube.com/watch?v=Bk4gYOUVS8w; **Exhibit 12**, *HS Provider Portal*, HealthyStart, https://portal.thehealthystart.com/login (stating that HealthyStart has "over 500 patents"). In fact, the vast majority of these patents are expired and Ortho-Tain has only 20 current U.S. patents.

b. That Ortho-Tain/HealthyStart have "serv[ed] 4 million patents." *See, e.g.*, **Exhibit 13**, *About Us*, HealthyStart, https://www.thehealthystart.com/about-us (last accessed Feb. 10, 2021); *see also*, **Exhibit 10**, photo of Ortho-Tain's event booth ("4 Million Cases Treated). In fact, on information and belief, Ortho-Tain has not treated this many patients and does not even track or maintain adequate information to ascertain the number of patients treated by Ortho-Tain products or whether this treatment was "successful."

c. That "Ortho-Tain® appliances are the only removable orthodontic appliance cleared by the FDA to correct both functional and aesthetic problems." *See* **Exhibit 14**, *What is Ortho-Tain*, Ortho-Tain, https://www.orthotain.com/what-is-ortho-tain/ (last accessed Feb. 10, 2021). In fact, Ortho-Tain's products are not cleared with the FDA, they are only registered. FDA registration is essentially automatic and does not involve substantive review or "approval" by the FDA. By contrast, Vivos has both FDA-registered and cleared products.

d. That the "HealthyStart system … is FDA Approved." **Exhibit 15**, *HealthyStart: About*, Linkedin, https://www.linkedin.com/company/healthy-start. In fact, Ortho-Tain's products are not approved or cleared with the FDA—they are only registered. By contrast, Vivos has both FDA-registered and cleared products.

60.     Ortho-Tain's promotional materials containing the above assertions constitute commercial advertising. Specifically, these materials were produced and distributed to the public for the purpose of promoting Ortho-Tain's products and services.

61.     Ortho-Tain's misrepresentations have or are likely to cause confusion or mistake as to the characteristics of Ortho-Tain's goods or services.

62.     Ortho-Tain's misrepresentations are material, in that they have or are likely to influence dentists' and consumers' decisions regarding whether to purchase Ortho-Tain's goods or services.

63.     Ortho-Tain's promotional materials caused multiple false statements to enter interstate commerce. Specifically, Ortho-Tain hosts the materials on its websites, social media pages, and on YouTube, where they are viewable to dentists and consumers across the country. Ortho-Tain also uses its promotional materials at events across the country.

64.     Ortho-Tain's misrepresentations are likely to harm Vivos by misleading prospective clients—in the form of dentists and consumers—about the track record, intellectual property, and regulatory approval of Ortho-Tain and Ortho-Tain/Healthy Start products.

65.     Ortho-Tain's deception in its promotional materials is willful and deliberate. Ortho-Tain has failed to correct or take down its promotional materials despite lacking a good faith basis to make the assertions at issue, and in some cases, despite being on notice that the assertions are false and contain misleading information.

66.     Vivos is entitled to relief under the Lanham Act, 15 U.S.C. § 1125.

## COUNT 2

**Violation of the Colorado Consumer Protection Act, C.R.S. §§ 6-1-101, *et seq.***

67.     Vivos realleges and incorporates all prior paragraphs of this Amended Complaint as if alleged herein.

***Violations Based on Disparagement of Vivos's Products***

68.     Ortho-Tain engaged in unfair or deceptive trade practices as set forth in C.R.S. § 6-1-105, by, *inter alia*:

   a. Disparaging the goods, services, and business of Vivos by false or misleading representations of fact;

   b. Knowingly making false representations as to the source, approval, or certification of Vivos's goods and services;

   c. Knowingly making false representations as to the characteristics, ingredients, uses, or benefits of Vivos's goods and services; and

   d. Knowingly or recklessly engaging in unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent acts or practices.

69.     Ortho-Tain's actions constituting unfair and deceptive trade practices include but are not limited to undertaking a deliberate campaign to disparage Vivos and its goods and services through a series of email advertisements targeted to Vivos dentists and sent in the fall of 2020. False and misleading statements made in those advertisements included, *inter alia*:

a.  That Vivos's products are comparable to a "cheaply made back alley knock-off." In fact, Vivos products are made with high quality, bio-compatible components and techniques.

b.  That Vivos uses "third-party foreign manufacturing, possibly by unregulated entities and by unknown or non-disclosed materials." In fact, Vivos devices are manufactured in ISO-9001 facilities practicing Good Manufacturing Practices and in compliance with all applicable regulations. Vivos's contract manufacturing facilities undergo regular audits to ensure compliance with these standards.

c.  That Vivos "will offer you nothing more than a re-packaged statement of HealthyStart's materials …." In fact, Vivos uses its own unique advertising materials, products, and services.

d.  That "Vivos [does] not know if its products are safe and clinically effective." In fact, Vivos has undertaken extensive bio-compatibility testing and conducted unpublished case studies and independent provider surveys to ensure product safety, compliance, and efficacy.

e.  That "Vivos is seeking emergency life-support to make it through the year and even if it makes it to the ICU, it will still need to borrow further in order to stay alive …." In fact, Vivos is on sound financial footing.

f.  That Vivos's products are "neither approved nor cleared by the FDA." In fact, Vivos's products are Class I registered and Class II cleared by the FDA. By contrast, Ortho-Tain's products have not been cleared by the

FDA and are only registered with the FDA. Unlike clearance, FDA registration is essentially automatic and does not require substantive FDA review.

g.  That it is "unwise and potentially dangerous for any consumer to look to a new up-start [Vivos] or to a copy-cat system that seeks to grow and develop pediatric dentition with a series of appliances that have neither been independently researched nor FDA-cleared for the treatment of your pediatric patients." In fact, many dentists and patients have used Vivos products and services with great success and Vivos products are Class I registered and Class II cleared by the FDA. By contrast, Ortho-Tain's products hold only Class I registration. In addition, Vivos is not able to locate any evidence of clinical trials of Ortho-Tain products.

h.  That "Vivos … does not own any patents for oral appliances used to treat pediatric cases." In fact, Vivos holds the rights to four design patents, sixteen utility patents, multiple foreign patents, as well as trademark protection for its brand. Vivos's patents are not age-specific, and are equally applicable to children and adults.

i.  That providers "risk their money with Vivos" and that this "gamble extends to their pediatric patients." In fact, many dentists and patients have used Vivos products and services with great success and Vivos's products present no more risks than Ortho-Tain/HealthyStart's.

***Violations Based on Misrepresentations Regarding Ortho-Tain's Products***

70.     Further, Ortho-Tain engaged in unfair or deceptive trade practices as set forth in C.R.S. § 6-1-105 by, *inter alia*:

   a. Knowingly making false representations as to the approval or certification of Ortho-Tain's goods and services;

   b. Knowingly making a false representation as to the characteristics, ingredients, uses or benefits of Ortho-Tain's products;

   c. Knowingly making false representations as to the status of Ortho-Tain;

   d. Representing that Ortho-Tain's goods or services are of a particular standard, quality, or grade despite knowing that they are of another; and

   e. Knowingly or recklessly engaging in unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent acts or practices.

71.     Ortho-Tain's actions constituting unfair and deceptive trade practices in this respect include but are not limited to the following assertions by Ortho-Tain made to dentists in the fall of 2020 via Ortho-Tain's email advertisements, and statements made to dentists and the consuming public through promotional materials that Ortho-Tain continues to use through the present day:

   a. That Ortho-Tain/HealthyStart has "500+ approved patents." In fact, the vast majority of these patents are expired and Ortho-Tain has only 20 current U.S. patents.

   b. That Ortho-Tain/HealthyStart has "successfully treated" "more than 4 million patients." In fact, on information and belief, Ortho-Tain has not

treated this many patients and does not even track or maintain adequate information to ascertain the number of patients treated by Ortho-Tain products or whether this treatment was "successful."

c.  That "HealthyStart® is the ONLY company that has invented, patented, developed, and offered a comprehensive series of oral appliances that actually treat the underlying root causes of pediatric Sleep Disordered Breathing." In fact, Vivos has done precisely that and has an intellectual property portfolio and product line to prove it.

d.  That Ortho-Tain's oral appliances "have been independently and clinically tested and are cleared by the U.S. Food and Drug Administration and other international regulatory organizations." In fact, Ortho-Tain's products are not cleared with the FDA, they are only registered. By contrast, Vivos has both FDA-registered (Class I) and cleared (Class II) products. In addition, Vivos is not able to locate any evidence of clinical trials of Ortho-Tain products.

72.     Ortho-Tain communicated all of the above false statements and undertook other unfair or deceptive conduct described above in the course of its business, vocation, or occupation. Specifically, Ortho-Tain sent its advertising emails through its sales department to dentists. Ortho-Tain also developed and published promotional materials now hosted on its websites, posted on its social media pages, posted on YouTube, and were used at Ortho-Tain events.

73.     Ortho-Tain's actions significantly impact the public as actual or potential consumers of Vivos and Ortho-Tain's goods because dentists across the country, including in Colorado, may purchase the goods or services at issue and use them to treat their patients. In addition, some of Ortho-Tain's misstatements are targeted directly to the consuming public, including consumers in Colorado.

74.     Ortho-Tain's misrepresentations have reached thousands of individuals nationwide, including individuals in the State of Colorado.

75.     Ortho-Tain's misrepresentations are directed at dentists and consumers who generally lack sophistication regarding FDA regulations and/or approvals, patents, SEC filings, and other topics put at issue by Ortho-Tain's statements.

76.     Ortho-Tain's communications also harm Vivos, a competitor business to Ortho-Tain headquartered in Colorado. This harm arises in the course of Vivos's business.

77.     As a result of Ortho-Tain's misrepresentations, Vivos suffered injury in fact to a legally protected interest through harm to its professional reputation and existing business relationships, loss of goodwill, and upon information and belief, loss of prospective customers.

78.     Ortho-Tain's conduct described herein constitutes bad faith conduct because it is knowing, willful, and intentional. Specifically, Ortho-Tain knew that its statements about Vivos and Vivos's products, as well as its statements about its own business and products, were false. Indeed, at the time of its email advertisements, Ortho-Tain already faced legal claims seeking to prevent its defamatory and tortious

conduct toward Vivos. Notwithstanding this knowledge, Ortho-Tain doubled down on its efforts and initiated a misleading email advertising campaign targeted at Vivos customers. In addition, at the time of the email advertisements, Vivos had already corrected several of Ortho-Tain's allegations regarding patents in briefing in the case styled *Ortho-Tain, Inc. v. Colorado Vivos Therapeutics Inc., et al.*, No. 1:20-cv-04301, currently pending in the U.S. District Court for the Northern District of Illinois.

<u>**COUNT 3**</u>

**Libel Per Se**

79.    Vivos realleges and incorporates all prior paragraphs of this Amended Complaint as if alleged herein.

***Libel to Vivos's Dentist Customers***

80.     Ortho-Tain and/or its agents, at Ortho-Tain's direction, authored multiple written form of emails containing false and misleading information about Vivos. These false and misleading written statements include, *inter alia*:

a. That Vivos's products are comparable to a "cheaply made back alley knock-off." In fact, Vivos products are made with high quality, bio-compatible components and techniques.

b. That Vivos uses "third-party foreign manufacturing, possibly by unregulated entities and by unknown or non-disclosed materials." In fact, Vivos devices are manufactured in ISO-9001 facilities practicing Good Manufacturing Practices and in compliance with all applicable regulations.

      Vivos's contract manufacturing facilities undergo regular audits to ensure compliance with these standards.

c.  That Vivos "will offer you nothing more than a re-packaged statement of HealthyStart's materials …." In fact, Vivos uses its own unique advertising materials, products, and services.

d.  That "Vivos [does] not know if its products are safe and clinically effective." In fact, Vivos has undertaken extensive bio-compatibility testing and conducted unpublished case studies and independent provider surveys to ensure product safety, compliance, and efficacy.

e.  That "Vivos is seeking emergency life-support to make it through the year and even if it makes it to the ICU, it will still need to borrow further in order to stay alive …." In fact, Vivos is on sound financial footing.

f.  That Vivos's products are "neither approved nor cleared by the FDA." In fact, Vivos's products are Class I registered and Class II cleared by the FDA. By contrast, Ortho-Tain's products have not been cleared by the FDA and are only registered with the FDA. Unlike clearance, FDA registration is essentially automatic and does not require substantive FDA review.

g.  That it is "unwise and potentially dangerous for any consumer to look to a new up-start [Vivos] or to a copy-cat system that seeks to grow and develop pediatric dentition with a series of appliances that have neither been independently researched nor FDA-cleared for the treatment of your

pediatric patients." In fact, many dentists and patients have used Vivos products and services with great success and Vivos products are Class I registered and Class II cleared by the FDA. By contrast, Ortho-Tain's products hold only Class I registration.

h. That "Vivos … does not own any patents for oral appliances used to treat pediatric cases." In fact, Vivos holds the rights to four design patents, sixteen utility patents, multiple foreign patents, as well as trademark protection for its brand. Vivos's patents are not age-specific, and are equally applicable to children and adults.

i. That providers "risk their money with Vivos" and that this "gamble extends to their pediatric patients." In fact, many dentists and patients have used Vivos products and services with great success and Vivos's products present no more risks than Ortho-Tain/HealthyStart's.

81. Ortho-Tain's false and misleading statements defamed Vivos in its trade, business, or profession.

82. Ortho-Tain and its agents communicated these written statements to dentists across the country and were understood by those same dentists.

83. Ortho-Tain knew or should have known that its communications were false and/or misleading and that they defamed Vivos in its trade, business, or profession.

84. Ortho-Tain's conduct has caused Vivos harm in the form of injury to Vivos's business relationships with its dentist clients, reputation, and loss of goodwill.

Upon information and belief, Ortho-Tain's statements have also caused dentists to refrain from buying Vivos goods or services.

85.     Ortho-Tain's actions have damaged Vivos in an amount to be determined at trial.

**Libel to Benco**

86.     In the spring of 2020, Ortho-Tain and/or its agents, at Ortho-Tain's direction, authored multiple written statements containing false and misleading information about Vivos and communicated those statements to Vivos's business partner, Benco. These false and misleading written statements include, *inter alia*:

    a.  False allegations that Vivos violated federal and state law, including the Lanham Act;

    b.  Incorrect assertions that Vivos made knowingly false misrepresentations at Benco events, that Vivos attempted to "pawn off" Vivos products as Ortho-Tain's products, and that Vivos interfered with Ortho-Tain's contracts with dental professionals;

    c.  Improper disparagement and mischaracterizations of Vivos's products, professional reputation, and intellectual property;

    d.  False statements that Vivos has no patents or patented appliances suitable for pediatric use;

    e.  False statements that Vivos has no FDA clearances;

    f.  False statements that Vivos has no history of success;

g.  Disparaging statements about Vivos and its products, including that Vivos products include "a poorly copied plastic mouthguard that neither reshapes airway systems nor repositions teeth";

h.  False statements that Vivos engaged in conduct that was "unethical, immoral, and … illegal"; and

i.  Improper threats to Benco predicated on the above statements.

87.  Copies of Ortho-Tain's libelous communications are attached as Exhibits 1-4.

88.  Ortho-Tain's false and misleading statements defamed Vivos in its trade, business, or profession.

89.  Ortho-Tain communicated these written statements to Benco and were understood by Benco.

90.  Vivos has a business relationship and contracts with Benco.

91.  Ortho-Tain is aware of this relationship and was aware of the relationship at the time of the communications at issue.

92.  Ortho-Tain knew or should have known that its statements to Benco were false and/or misleading and that they defamed Vivos in its trade, business, or profession.

93.  Ortho-Tain's conduct has caused Vivos harm in the form of injury to Vivos's reputation with Benco and loss of goodwill with Benco. Ortho-Tain's conduct has also strained the business relationship between Vivos and Benco.

94.    Ortho-Tain's actions have damaged Vivos in an amount to be determined at trial.

## COUNT 4

### Slander Per Se

95.    Vivos realleges and incorporates all prior paragraphs of this Amended Complaint as if alleged herein.

96.    In the spring of 2020, Ortho-Tain made false and misleading oral statements, including, upon information and belief:

    a.  False allegations that Vivos violated federal and state law, including the Lanham Act;

    b.  Incorrect assertions that Vivos made knowingly false misrepresentations at Benco events, that Vivos attempted to "pawn off" Vivos products as Ortho-Tain's products, and that Vivos interfered with Ortho-Tain's contracts with dental professionals;

    c.  Improper disparagement and mischaracterizations of Vivos's products, professional reputation, and intellectual property; and

    d.  Improper threats to Benco predicated on the above statements.

97.    Upon information and belief, these statements were made by Ortho-Tain CEO, Leslie Stevens and Ortho-Tain outside counsel Nathan Neff. They were made to Benco General Counsel Robert Bisal and Benco Managing Director Chuck Cohen.

98.    These oral statements defamed Vivos in its business, trade, or profession.

99.     Ortho-Tain communicated these statements to Benco and were understood by Benco.

100.    Vivos has a business relationship and contracts with Benco.

101.    Ortho-Tain is aware of this relationship as was aware of that relationship at the time of the oral statements in question.

102.    Ortho-Tain knew or should have known that its statements to Benco were false and/or misleading and that they defamed Vivos in its business, trade, or profession.

103.    Ortho-Tain's conduct has caused Vivos harm in the form of injury to Vivos's reputation with Benco and loss of goodwill with Benco. Ortho-Tain's conduct has also strained the business relationship between Vivos and Benco.

104.    Ortho-Tain's actions have damaged Vivos in an amount to be determined at trial.

## **COUNT 5**

### **Intentional Interference with Contract/Business Relations**

105.    Vivos realleges and incorporates all prior paragraphs of this Amended Complaint as if alleged herein.

### *Interference with Vivos's Dentist Customers*

106.    Vivos has existing business relationships and contracts with dentists across the country.

107.    Ortho-Tain knew that Vivos has contracts and business relations with dentists across the country.

108.    Ortho-Tain intentionally interfered with Vivos's business relationships and contracts with dentist-customers by sending those dentists a form advertising email containing false, misleading, and disparaging allegations about Vivos and Vivos's products. *See* Exs. 5-9.

109.    Ortho-Tain's interference was improper because it was based on false, misleading, and disparaging statements and motivated by a desire to unfairly impugn Vivos.

110.    Ortho-Tain's interference has caused Vivos loss of goodwill with customers and harm to Vivos's reputation.

111.    Ortho-Tain's interference has damaged Vivos in an amount to be determined at trial.

***Interference with the Vivos-Benco Relationship***

112.    Vivos has an existing business relationship and contract with Benco.

113.    Ortho-Tain knew that Vivos has contracts and business relations with Benco.

114.    Ortho-Tain intentionally interfered with Vivos's business relationship and contracts with Benco by repeatedly communicating to Benco false, misleading, and disparaging allegations about Vivos and by making threats against Benco on the basis of these allegations. The written portion of these communications are attached herein at Exhibits 1-4.

115.    Ortho-Tain's interference was improper because it was based on false, misleading, and threatening statements and motivated by a desire to unfairly impugn Vivos.

116.    Ortho-Tain's actions have made Vivos's performance under its contracts with Benco more difficult. Specifically, Ortho-Tain's conduct has strained the business relationship between Vivos and Benco and forced the two parties to divert time, attention, and resources away from collaboration and toward Ortho-Tain's allegations and threats.

117.    Ortho-Tain's interference has caused Vivos loss of goodwill with Benco and harm to Vivos's reputation.

118.    Ortho-Tain's interference has damaged Vivos in an amount to be determined at trial.

## COUNT 6

### Declaratory Judgment

119.    Vivos realleges and incorporates all prior paragraphs of this Amended Complaint as if alleged herein.

120.    Vivos seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that Vivos did not commit false designation of origin in violation of the Lanham Act through its acts at Benco events, as Ortho-Tain has falsely asserted to Benco. *See* Exs. 1-4.

121.    Vivos did not sell its goods under Ortho-Tain's name at the Benco events.

122.    Vivos did not sell Ortho-Tain's goods under Vivos's name at the Benco events.

123. Vivos did not make false or misleading statements of fact about Ortho-Tain or its products at Benco events as Ortho-Tain alleged in its communications to Benco.

124. Vivos's statements were not used in a commercial advertisement or promotion, within the meaning on the Lanham Act.

125. Statements that Vivos made at Benco events did not deceive and were not likely to deceive attendees in a material way.

126. Vivos's statements did not cause and were not likely to cause competitive or commercial injury to Ortho-Tain.

127. Accordingly, Vivos's conduct at the Benco events did not violate the Lanham Act as Ortho-Tain has alleged to Benco.

128. A declaration that Vivos did not violate the Lanham Act at the Benco events will put to rest Ortho-Tain's false allegations and threats to Vivos and others, including Benco.

## **PRAYER FOR RELIEF**

WHEREFORE, Vivos demands judgment as follows:

A. For an order enjoining Ortho-Tain from continuing to defame Vivos;

B. For an order enjoining Ortho-Tain from further interfering with Vivos's business relationship and contracts with Benco;

C. For an order enjoining Ortho-Tain from further interfering with Vivos's business relationships and contracts with Vivos dentists;

D.  For an order requiring Ortho-Tain to correct or remove its false assertions in all public-facing materials and enjoining Ortho-Tain from making such statements in the future;

E.  For an order declaring that Vivos did not violate the Lanham Act as alleged by Ortho-Tain;

F.  For an order finding in favor of Vivos on all counts asserted herein;

G.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

H.  For disgorgement of Ortho-Tain's profits,

I.  For enhanced damages;

J.  For treble damages;

K.  For an order awarding Vivos its reasonable attorneys' fees and expenses and costs of suit;

L.  For pre- and post-judgment interest on all amounts awarded; and

M.  For any other relief this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Dated: February 12, 2021.

Respectfully submitted,

*/s/ Michael A. Gehret*
Michael A. Gehret
Armstrong Teasdale LLP
257 East 200 South, Suite 350
Salt Lake City, UT 84111
Telephone:  801.638.8945
Facsimile:  720.200.0679
mgehret@atllp.com

Alec P. Harris
Nicholas Peppler
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, CO 80237
Telephone:  720.200.0676
Facsimile:  720.200.0679
aharris@armstrongteasdale.com

*Attorneys for Plaintiff Vivos Therapeutics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2021, a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** was transmitted to all counsel of record using the CM/ECF system.

*/s/ Vanessa Sanchez*